### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN CLARK,** | : | **Civil No. 1:12-CV-1388** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM  OPINION

### I.     Statement of Facts and of the Case

#### A.     Introduction

In this case we are asked to evaluate an Administrative Law Judge's (ALJ) decision denying social security disability benefits to the plaintiff, Brian Clark. That ALJ decision was made against a factual backdrop marked by conflicting and inconsistent evidence relating to Clark's visual acuity and medical condition, but a factual record which contained substantial evidence suggesting that Clark, a younger worker, retained the residual functional capacity to perform numerous jobs in the

national and regional economies.  Upon consideration, for the reasons set forth below, we conclude that the ALJ's decision is supported by substantial evidence which is adequately explained on the record and, therefore, this decision will be affirmed.

### B.    Clark's Medical and Employment History

On December 22, 2008, Brian Clark filed applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") application under Titles II and XVI, respectively, of the Social Security Act. 42 U.S.C. §§ 401 433, 1381-1383c, alleging that he could no longer work any job in the national economy since June 30, 2007 due to blindness in his left eye; vision difficulties in right eye; and stomach problems.  (Tr. 115-25, 141, 146.)  Clark was 39 years old on the alleged onset date of June 30, 2007, (Tr. 141.),making him a younger individual under Social Security regulations.   He had a high school education, and reported past work as an assistant manager, auto mechanic, and electric contractor.  (Tr. 51, 147.)

### 1.    Clark's Visual Acuity

With respect to these presenting medical conditions, the record developed during these disability proceedings was mixed and equivocal.  For example, with regard to Clark's first medical concern, his limited visual acuity, the evidence before the ALJ showed that on February 21, 2009, Clark was evaluated by consultative

2

examiner Joseph Greene, M.D.  (Tr. 217-20.)  On examination, Dr. Greene found that Clark's "[v]ision in his right eye is 20/70" and "in his left eye he is blind."  (Tr. 218.) Dr. Greene, therefore, diagnosed Clark as suffering from "no vision in his left eye," (Tr. 219.) but given the remaining vision in his right eye opined that Clark only had "a mild level of limitation in job-related activities and mild level of limitation in [activities of daily living] specifically related to decreased vision in his left eye."  (Tr. 219.)[1]

Three months later, on May 28, 2009, a second consultative examiner Allen Elliot, M.D., examined Clark.  (Tr. 229-32.)  On examination, Dr. Elliot confirmed that Clark's left eye had "[n]o light perception" but found that Clark's vision in his right eye was 20/30 with correction.  (Tr. 229.)  Accordingly, Dr. Elliot diagnosed Clark as suffering from blindness in left eye with chronic uveitis and myopic astigmatism in his right eye, but opined that Clark's "[d]ecreased vision [in his] right eye" "[s]hould not preclude [him] from doing work related activity requiring good vision in 1 eye only."  (Tr. 230.)

---

[1]Dr. Greene further found that plaintiff's joints were only "minimally tender to palpation" and "[h]is bilateral hip flexion range is 0 to 75."  (Tr. 219.)  These findings were also consistent with a conclusion that Clark retained the ability to perform some work in the national economy.

This visual acuity assessment was corroborated by another examination conducted in December of 2009 by Randall Peairs, M.D.  During this examination, Dr. Peairs found that Clark had "a vision of 20/25 in the right [eye] and no light perception in the left [eye]."  (Tr. 404.)

Arrayed against this medical evidence which consistently found that Clark's vision problems did not render him wholly disabled was one thin reed.  In late May 2010, at Clark's request, another health care provider, Dr. Schoonover completed a check-off form prepared by Clark's counsel in these administrative proceedings.  This one-page form was internally inconsistent, indicating in one place that Clark had remaining vision in his better eye after best correction of 20/200 or less, and then stating at another location that Clark's visual efficiency in his better eye after best correction was "20/50 in right eye."  (Tr. 406.)

## 2.    Clark's Other Presenting Medical Concerns

As for Clark's other presenting medical concerns, which included diabetes, shortness of breath, and back pain, the medical record presented to the ALJ was likewise equivocal and mixed.  Thus, the record showed that Gautam Dev, M.D., a pulmonologist, examined Clark in December of 2007, for complaints of chest pain and shortness of breath.  (Tr. 211, 216.)  At that time Clark reported that he worked as an automotive repairman and had often used his mouth to syphon off gasoline.  (Tr.

4

211, 216.)  Clark also reported that he smoked heavily.  (Tr. 211, 216.)  Dr. Dev

diagnosed Clark with pneumonia, and also noted a possible infection from inhaling

hydrocarbon.  (Tr. 211, 216.)

Clark's medical history then contained no examination or treatment records

from 2008, but revealed that Clark received a consultative examination from Dr.

Joseph Greene in February 2009.  While Dr. Greene described Clark as obese and

unkempt in appearance and noted that Clark reported that "[m]ost recently he is

employed as an auto mechanic," (Tr. 218), Dr. Greene's medical assessment of the

claimant was largely unremarkable.  That examination, in part, revealed that Clark

reported no lifting limitations with respect to weight or frequency; further reported

no problems with activities of daily living, but estimated that he could only stand,

walk, or sit for about 10 to 15 minutes before having to move or rest.  (Tr. 217.)  On

examination by Dr. Greene, Clark displayed a full range of motion of all joints, which

were minimally tender to palpation.  (Tr. 219.)  Clark also had a normal station and

gait, and no need for an assistive device.  (Tr. 218-19)  He demonstrated no problems

with gross manipulation or grip strength; (Tr. 218), his upper and lower extremity

strength was normal; and he was able to rise from a seated position without using his

arms.  (Tr. 219.)

Following this examination in March 2009, a state agency physician, Lina B. Caldwell, M.D., reviewed Clark's file and noted that no evidence existed to support plaintiff's belief that he had the medically determinable impairments ("MDI's") of stomach problems, back pain, or migraines. (Tr. 227.) Dr. Caldwell further noted the consultative examiner's report, which found that Clark was not limited in the amount of weight he could lift or how frequently he could lift it, (Tr. 227.), and concluded that no objective medical evidence supported Clark's allegation that he was unable to stand, walk, and sit for only 10-15 minutes without having to move or rest. (Tr. 227.)

In August of 2009, Clark underwent a brief hospitalization for complaints of shortness of breath and frequent urination. (Tr. 330.) During this hospitalization Clark was diagnosed with diabetes and received diabetic counseling, which included the need to eat a low carbohydrate diet. (Tr. 290.) During this admission, various studies were conducted and all were normal, including an echocardiogram and chest x-rays to check for heart problems, and a venous ultrasound to check for deep venous thrombosis of the legs. (Tr. 292-94, 324-25, 328, 330.) Accordingly, Clark's condition was treated conservatively. He was placed on a low-carbohydrate diet, and counseled to make lifestyle changes. (Id.) By mid-October 2009, Clark's doctor reported improvements in Clark's conditions stating that his diabetes was now

moderately controlled – his blood sugar levels were in the 100-150 range, whereas they had been in the 300-400 range.  (Tr. 358.)  At follow-up evaluations for diabetes and hypertension in December 2009 and January 2010, Clark reported that he was exercising four times per week and following the recommended diet.  (Tr. 337, 343)  Clark's hypertension and diabetes seemed to be controlled, and he was taking his medications as prescribed with no side effects.  (Tr. 337, 343, 344.)

Clark's physical examinations at this time showed that he was obese, standing 6'0" tall and weighing 285 pounds. (Tr. 338.)  His respirations were regular and labored, and he had good airflow with a mild expiratory wheeze. (Tr. 338.)  He had full muscle strength and tone, and his straight leg raise test was negative. (Tr. 338, 344.)  With respect to diabetes, plaintiff did not want to try insulin; therefore, his doctor recommended diet and exercise along with strict medication compliance. (Tr. 338.)

Clark's medical records also revealed inconsistencies between his clinical treatment findings throughout 2010 and a residual functional capacity report completed by his treating physician, Dr. Guzek, in January 2010.  During this period, Clark's clinical findings were largely unremarkable.  Thus, examination notes from January, March, and April of 2010, showed that Clark reported exercising four times per week, (Tr. 374, 378, 390, 398.), and was taking his diabetes medication as

prescribed.  (Tr. 374, 398.)  Clark had also undergone a cardiac catheterization, which

showed non-obstructing coronary atherosclerosis.  (Tr. 374, 378, 392.)  While Clark

reported low back pain that radiated to his right leg, which was aggravated by

activity, bending, lifting, prolonged sitting, and straining, (Tr. 374, 378, 390, 398.),

Darvocet alleviated his pain.  (Tr. 374, 378, 390, 398)  Furthermore, Clark's straight

leg raising test was negative; his diabetic foot examination was normal;  (Tr. 375,

379-80, 391, 399.); and he had normal posture, no instability, and normal strength and

muscle tone.  (Tr. 391, 399.)

        In marked contrast to these clinical findings was the residual functional

capacity questionnaire completed by Clark's treating physician, Dr. Guzek, in January

2010.  (Tr. 369-370.)  This two page check list document describes a much more

severe and dramatic constellation of conditions than were revealed in Clark's

treatment records, including a finding that Clark would require 15 minute rest breaks

every 10 minutes during an 8 hour work day.  (Id.)[2]  This finding, which was

tantamount to a declaration that Clark could work, on average, less than 30 minutes

---

        [2]This residual functional capacity report form had an unusual provenance in
some other respects which bear noting.  Specifically, the form bore what appeared
to be several different types of handwriting.  Furthermore, in at least some of the
handwritten notations purportedly made by Clark's treating physician on this form,
simple medical terms like the word chronic were misspelled by the author
("cronic"). (Tr. 369.)

per hour during an 8 hour work day, appear to be wholly unsupported by an other

specific clinical findings or objective evidence.

### 3.   The ALJ Hearing and Decision

It was against the backdrop of this equivocal record regarding Clark's physical

condition that the ALJ conducted a hearing on July 6, 2010.  (Tr. 46-66.)  At this

hearing, Clark testified, asserting that "I can't pretty much do nothing," (Tr. 59.), an

assertion that seemed at odds with Clark's exercise regime that he described to his

doctors, to whom Clark reported exercising four times per week.  (Tr. 374, 378, 390,

398.) A vocational expert (VE) also testified,  presenting evidence that a hypothetical

individual, with Clark's work history, who had those limitations set forth by the ALJ,

could perform jobs that existed in significant numbers in the national economy. (Tr.

61-66.)

On September 21, 2010, the ALJ issued his decision denying Clark's

application for benefits.   (Tr. 14-25.)   After reviewing the conflicting and

contradictory medical evidence, (Tr. 20-24.) the ALJ found that Clark suffered from

the following conditions that, while severe, did not meet any of the listing criteria

which would qualify Clark for benefits at step three of the five step Social Security

disability assessment process:  chronic obstructive pulmonary disease, blindness in

the left eye, degenerative disc disease, diabetes, obesity and headaches. (Tr. 19.) The

ALJ further concluded that Clark retained the ability to perform:

> light work . . . , except the claimant can climb, balance, and stoop
> occasionally and he can never climb ladders, ropes, ro scaffolding. He
> is to avoid temperature extremes, humidity, vibration, fumes, and
> hazards such as moving machinery and unprotected heights. The
> claimant has limited depth perception and visual fields.

(Tr. 20.)

Based on this determination, the ALJ found that, while Clark could not perform

his past relevant work, he could perform other clerical jobs that existed in significant

numbers in the national economy, and thus was not disabled. (Tr. 25.)

This appeal followed. (Doc. 1.) The parties have now fully briefed this matter,

and this case is now ripe for resolution. For the reasons set forth below, we find that

substantial evidence supports the ALJ findings in this case; that those findings are

adequately explained on the record; and that the findings reflect an appropriate

assessment of all of the medical evidence. Therefore, it is recommended that this

appeal be denied.

II.    **Discussion**

    A.    **Standards of Review–The Roles of the Administrative Law Judge and This Court**

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

11

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. <u>See</u> 20 C.F.R. § 404.1520. <u>See also</u> <u>Plummer  v. Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. <u>See</u> 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. <u>See</u> 20 C.F.R. § 404.1520.

This disability determination also involves shifting burdens of proof. The initial burden rests with the claimant in steps one through four to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).

Moreover, where a disability determination turns on an assessment of the level

of a claimant's pain, the Social Security Regulations provide a framework under which

a claimant's subjective complaints are to be considered.  20 C.F.R. § 404.1529.  Such

cases require the ALJ to "evaluate the intensity and persistence of the pain or

symptom, and the extent to which it affects the individual's ability to work."

Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Cases involving an assessment

of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent

to which a claimant is accurately stating the degree of pain or the extent to which he

or she is disabled by it."  Id.

In making this assessment, the ALJ is guided both by statute and by regulations.

This guidance eschews wholly subjective assessments of a claimant's disability.

Instead. at the outset, by statute the ALJ is admonished that an "individual's statement

as to pain or other symptoms shall not alone be conclusive evidence of disability as

defined in this section; there must be medical signs and findings, established by

medically acceptable clinical or laboratory diagnostic techniques, which show the

existence of a medical impairment that results from anatomical, physiological, or

psychological abnormalities which could reasonably be expected to produce the pain

or other symptoms alleged and which, when considered with all the evidence. . . ,

would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding his symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can

be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.   Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate

in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla

16

of proof.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence."  Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).  Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')."  Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000).  Furthermore, in determining if the

ALJ's decision is supported by substantial evidence the court may not parse the record

but rather must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970

(3d Cir. 1981).

### B.    Legal Benchmarks for Assessing Treating Physician Opinions

Further, it is beyond dispute that, in a social security disability case, the ALJ's

decision must be accompanied by "a clear and satisfactory explication of the basis on

which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  This principle

applies with particular force to the testimony of a treating physician, testimony that is

to be accorded great weight by the ALJ.  In this regard, the legal standards governing

our evaluation of this type of evidence are familiar ones.  In Morales v. Apfel, 225

F.3d 310  (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the

standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that
> the ALJ accord treating physicians' reports great weight, especially
> "when their opinions reflect expert judgment based on a continuing
> observation of the patient's condition over a prolonged period of time."
> Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v.
> Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala,
> 40 F.3d 43, 47 (3d Cir.1994);  Jones, 954 F.2d at 128; Allen v. Bowen,
> 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405,
> 408 (3d Cir.1988); Brewster, 786 F.2d at 585.  Where, as here, the
> opinion of a treating physician conflicts with that of a non-treating,
> non-examining physician, the ALJ may choose whom to credit but
> "cannot reject evidence for no reason or for the wrong reason."
> Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066

(3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  See Adorno, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Id. at 317-318.

Furthermore, when assessing competing views of treating and non-treating physicians, the ALJ and this Court are cautioned that:

[A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence.  Ferguson, 765 F.2d at 37 (1985).  When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993).  The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.  See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983).  Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.)  An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.  Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985).

19

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999).

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(c). When the opinion of a physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(c).

Additionally, the nature and extent of the doctor-patient relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with

respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain.  When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R.  § 416.927(c).

Given this recognition of the great weight that should attach to the professional judgment of treating physicians, it is axiomatic that an ALJ must provide an adequate explanation for any decision which chooses to disregard a treating physician's findings regarding illness, impairment and disability.   Moreover, when an ALJ fails to adequately explain why a treating physician's medical assessment has been discounted, a remand for further development of the factual record is proper.  See e.g., Burnett v. Commissioner of Social Security, 220 F.3d 112, 119 (3d Cir. 2000)(failure to adequately discuss compering medical evidence compels remand of ALJ decision); Shaudeck v. Commissioner of Social Security, 181 F.3d 429 (3d Cir. 1999); Allen v. Brown, 881 F.2d 37, 40-41 (3d Cir. 1989); Belotserkovskaya v. Barnhart, 342 F.Supp.2d 335 (E.D. Pa. 2004).  Thus, as one court has aptly observed:

"An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.1993) (internal quotation marks, citations and indication of alteration omitted).  Where the findings are those of a treating physician, the Third Circuit has "long accepted" the

proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Id. (citations omitted)  An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, see Mason, 994 F.2d at 1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the reporting doctor is a specialist, see Id. at 1067.  An ALJ may not, however, reject medical determinations by substituting his own medical judgments.  See Frankenfield, 861 F.2d at 408.

Terwilliger v. Chater, 945 F.Supp. 836, 842-3 (E.D.Pa.1996).

## C.   Other Procedural and Substantive Requisites for an ALJ Ruling–Proper Hypothetical Questions for Vocational Experts

Furthermore, since one of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy, an ALJ must exercise care when formulating proper hypothetical questions to vocational experts who opine on the availability of work for a particular claimant.  In this regard, the controlling legal standards are clear, and clearly defined.  As the United States Court of Appeals for the Third Circuit has observed:

Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny, 745 F.2d at

22

> 218.  A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added).  Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.  <u>Podedworny</u>, 745 F.2d at 218 (citing <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1155 (3d Cir.1983)).

<u>Burns v. Barnhart</u>, 312 F.3d 113, 123 (3d Cir. 2002).

The formulation of a proper hypothetical question has a dual significance in social security proceedings.  First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding. <u>Burns v. Barnhart</u>, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.")  However, more fundamentally, an erroneous or inadequate hypothetical question undermines the reliability of any residual function capacity determination since " objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 n. 8 (3d Cir. 2005).

### D.   The ALJ's Decision Was Supported By Substantial Evidence

Judged against this deferential standard of review we find that the ALJ's disability decision in this case was supported by "substantial evidence" and, therefore, may not now be disturbed.  Indeed, given the many conflicting and contradictory threads in the evidence presented to the ALJ, this ruling reflects a thorough, careful, balanced analysis of the proof.  It is, therefore, the paradigm of a decision which draws carefully upon substantial evidence.

### 1.   There Is Substantial Evidence Supporting the ALJ's Conclusion That Clark's Physical Limitations Were Not Disabling and the ALJ Did Not Err in Assessing Clark's Credibility or the Opinion of Dr. Guzek

At the outset, with respect to Clark's overall claims of physical disability, and his assertion that the ALJ erred in his step five analysis of his residual functional capacity, as we have noted this decision involved an assessment of conflicting and equivocal medical evidence.  This evidence showed that the plaintiff's subjective complaints were not supported by independent diagnostic evidence and testing.  Since "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged,"

24

42 U.S.C. § 423(d)(5)(A), the results of these diagnostic tests, which did not confirm the type of abnormalities which would sustain the plaintiff's reports of pain, constituted "substantial evidence" supporting the ALJ's finding.

Similarly, the ALJ's assessment of the competing medical evidence rested upon sufficient "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Johnson, 529 F.3d at 200, and, therefore, was supported by "substantial evidence."  In this case, the ALJ correctly noted that the plaintiff's complaints were not consistently supported by medical treatment records.  The ALJ then determined that the various consulting medical opinions which found that Clark retained some residual capacity to work drew greater and more persuasive support from the evidence, than the isolated opinion of Dr. Guzek, an opinion which was at odds with the doctors' clinical findings.  Given these conflicts in the evidence, the ALJ as fact-finder was entitled to give greater weight in this regard to this objective medical evidence, objective evidence which did not support Clark's claims of total disability. Recognizing that the "substantial evidence" standard of review prescribed by statute is a deferential standard of review, Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004), which is met by less than a preponderance of the evidence but more than a mere scintilla of proof, Richardson v. Perales, 402 U.S. 389, 401 (1971), we find that the ALJ's decisions assessing this competing proof  regarding the plaintiff's's ability to

25

function despite his various claimed physical impairments was supported by substantial evidence and may not now be disturbed on appeal.

Beyond being adequately supported by the evidence, the ALJ's decision must must also be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. Thus, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). In this case we find that the ALJ's decision provided a full statement of the critical evidence, individually assessed that evidence, and adequately explained which proof was found persuasive, and which evidence was discounted. Since the ALJ's decision adequately addressed this conflicting and equivocal medical evidence, the medical evidence cited in this appeal did not suggest that the ALJ's ultimate conclusion was unsupported by substantial evidence, and there is no legal requirement that the ALJ discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), Clark's complaints about the manner in which the ALJ assessed the evidence

do not provide grounds for setting aside the ALJ's judgment when we scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Likewise the ALJ's consideration of Clark's subjective complaints of pain, and decision to reject those claims of pain as wholly disabling, was sufficiently supported in the record.  "[A]lthough '[t]estimony of subjective pain and inability to perform even light work is entitled to great weight,' Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir.1979), an ALJ may nonetheless reject a claim of disabling pain where he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record.' Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir.1990)." Harkins v. Comm'r of Soc. Sec., 399 F. App'x 731, 735 (3d Cir. 2010).  Contrary to the plaintiff's suggestion that the ALJ rejected these subjective complaints by simply referring to its own RFC assessment, in this case the ALJ specifically discussed the evidence which led the ALJ to conclude that Clark's subjective complaints were overstated.  In particular, the ALJ noted that the medical evidence did not support the level of disability claimed by Clark, citing the fact that Clark went without treatment for extended periods of time; that Clark responded well to conservative treatment; that tests and examinations did not reveal extensive objective evidence supporting the level of pain claimed by Clark; and that many tests revealed normal functioning for Clark.  (Tr. 24.)  These findings, which

were fully supported by the factual record, were also plainly sufficient to justify rejecting these subjective complaints of pain.  Harkins v. Comm'r of Soc. Sec., 399 F. App'x 731, 735 (3d Cir. 2010).

Similarly, The ALJ's treatment of Dr. Guzek's medical opinion, the only opinion which supported a finding of disability, met all of the requirements prescribed by law.  While the ALJ carefully considered this treating source opinion, the ALJ noted that the opinion was inconsistent with the doctor's own treating records, and was contradicted by the vast body of other medical records and opinion amassed during this case, including examinations conducted by consulting physicians. Therefore, the ALJ was entitled to discount this single unsupported, isolated opinion, and base its decision instead upon the greater weight of the medical evidence, medical evidence which consistently suggested that Clark retained some residual capacity to work.[3]

---

[3]We also reject the plaintiff's suggestion that the ALJ's decision rested solely upon an improper consideration of Clark's cigarette smoking.  While the ALJ did refer to this tobacco use as a complicating health factor for Clark, the ALJ's opinion rests on an assessment of the evidence as a whole and does not, in our view, turn on this one factor in the way, and to the degree that Clark suggests.

2.     **The Alleged Discrepancies in the Vocational Expert Testimony Do Not Require a Remand**

Finally, Clark argues that alleged discrepancies in the Vocational Expert's testimony compel a remand of this case.  Specifically, Clark contends that the Vocational Expert did not sufficiently identify the DOT listings that she relied upon in making her assessment that jobs existed in the regional and national economy.  In this regard, the VE identified job titles but did not provide the specific DOT listings for those job titles.  Clark also argues that the VE did not sufficiently attest to the consistency of her opinion with DOT listings when she merely testified that her summary was "consistent" with the DOT.  (Tr. 62.)

When assessing an attack upon a VE's testimony based upon alleged inconsistencies between that testimony and the DOT listings, it is clear that "some minor inconsistencies may exist between the vocational testimony and DOT information" and the presence of minor inconsistencies does not compel a remand. Rutherford v. Barnhart, 399 F.3d 546, 558 (3d Cir. 2005).  Thus, "[n]o law or regulation requires the ALJ to fit the claimant into precise categories or to find that a specific number of jobs are available.  Rather, the 'obligation of an ALJ' is 'to develop the record,' . . . , so as to determine whether there is suitable "gainful work ... in the national economy," 42 U.S.C. § 423(d)(2)(A)."  Sargent v. Comm'r of Soc. Sec., 476

F. App'x 977, 980 (3d Cir. 2012).   Therefore, when an "ALJ's exchange with the vocational expert provided substantial evidence that positions exist 'in significant numbers in the national economy' that are suitable given [the claimant's] limitations. See 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1) [t]he Commissioner therefore satisfie[s] his burden at step five of the disability determination process." Sargent v. Comm'r of Soc. Sec., 476 F. App'x 977, 980-81 (3d Cir. 2012).

Upon a consideration of the record.  We conclude that the ALJ's examination of the vocational expert in this case fulfilled the statutory mandate of assuring that positions exist in significant numbers in the national economy that are suitable given Clark's limitations.  We further find that the alleged discrepancies cited by Clark are not material to this assessment of whether substantial positions existed in the national economy for a person with Clark's limitations.  Therefore, these minor discrepancies do not compel a remand of this matter.  Sargent v. Comm'r of Soc. Sec., 476 F. App'x 977, 980-81 (3d Cir. 2012); Rutherford v. Barnhart, 399 F.3d 546, 558 (3d Cir. 2005).

In short, the record in this matter shows that the claimant's complete medical history was adequately developed, but that medical history justified the ALJ's finding that Clark was not disabled.  Recognizing that substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)," Johnson, 529 F.3d at 200; and consists of less than

a preponderance of the evidence but more than a mere scintilla of proof,  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); we conclude that there was substantial evidence which supported the ALJ findings in this case.  Therefore, those findings should not be disturbed on appeal.

### III.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the Commissioner's decision is upheld, and the clerk is directed enter judgment for the defendant and close this case.  An appropriate order will follow.

Submitted this 8th day of September, 2014.


*<u>S/Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge